AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

NOV 18 2015

MATTHEW J. DYKMAN
CLERK

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| *(Briefly describe the property to be seized)* | ) | |
| The proceeds, contents and any US currency | ) | Case No. |
| contained in BBVA Compass Bank account number | ) | |
| 2520000480 | ) | 15 mr 764 |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of _____New Mexico_____ is subject to forfeiture to the United States of America under ___18___ U.S.C. § ___981 and 982___ *(describe the property)*:

The proceeds, contents and any United States currency contained in BBVA Compass Bank account number 2520000480, held in the name of MBC Choice Trucking LLC.

The application is based on these facts:

See Attachment A - Affidavit

☐ Continued on the attached sheet.

*Dianna Aragon*
Applicant's signature

*Dianna Aragon, Special Agent*
Printed name and title

Sworn to before me and signed in my presence.

Date: __11/18/15__

City and state: __Albuquerque NM__

Judge's signature

**WILLIAM P. LYNCH**
**U.S. MAGISTRATE JUDGE**
Printed name and title

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANTS**

I, Dianna Aragon, being duly sworn, hereby depose and state the following:

**Background**

1.  I am a Special Agent with Internal Revenue Service – Criminal Investigation (IRS-CI) and have been so employed since September 2007.  As a Special Agent, I have received training at the Federal Law Enforcement Training Center, and graduated from the Special Agent Basic Training Program.  My duties and responsibilities include investigations into possible violations of federal criminal laws, including Title 26 (Internal Revenue Code), Title 18 (money laundering and other federal crimes), and Title 31 (Bank Secrecy Act).

2.  Prior to becoming a Special Agent with IRS-CI, I was employed as a Special Agent Student Trainee for IRS-CI.  I have conducted and participated in several financial investigations involving alleged criminal violations, written affidavits in support of search warrants, and participated in the execution of search and seizure warrants.

3.  I received a Bachelors of Business Administration with a concentration in Accounting from the University of New Mexico.  I worked as a senior associate for over two years for a large public accounting firm and became very familiar with standard business practices and financial records that a business entity keeps.

4.  In the course of my employment with IRS-CI, I have conducted or been involved in numerous investigations of alleged criminal violations which have included:  tax related violations (Title 26 U.S.C.); money laundering (Title 18 U.S.C. §§ 1956 and 1957); structuring cash transactions (Title 31 U.S.C. §5324(a)); mail fraud (Title 18 U.S.C. §1341); wire fraud (Title 18 U.S.C. §1343); illegal kickbacks (Title 41 U.S.C. § 54 and 54); drug trafficking (Title 21 U.S.C. §§841 and 846); and forfeiture (Title 18 U.S.C. §§981 and 982).

5. Through my training and experience, I am familiar with the methods and practices used by individuals and organizations involved in financial crimes and illicit activities that generate large amounts of income. These methods to hide income include, among others:

    a. Placing assets in names other their own or relying on third parties to conduct financial transactions on their behalf to avoid detection of these assets by government agencies;

    b. Attempting to conceal the source and legitimize the profits from illegal activity by using domestic banks and their attendant services (i.e. safe deposit boxes, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts).

6. Unless stated otherwise, I have personal knowledge of the matters set out in this affidavit. To the extent that any information in this affidavit is not within my personal knowledge, it was made known to me by other law enforcement officers, through my own review of the documents discussed in this affidavit.

7. Because this affidavit is made solely to seize funds pursuant to Title 18 U.S.C. §§981 and 982, I have not included every fact known to me about this investigation.

8. I make this affidavit in support of a warrant to seize the proceeds and contents from the following bank accounts owned and utilized by ENRIQUE CAVAZOS (CAVAZOS), Lindsey CAVAZOS, JOAQUIN ALANIZ (ALANIZ), GLEN LUCERO (LUCERO), and other associates to transfer, conceal, and disguise proceeds derived from illegal narcotics trafficking, pursuant to Title 18 U.S.C. §§981 and 982:

    a. Bank of America, account number 439005117394, held in the name of CVZS LLC;

    b. Bank of America, account number 439004904744, held in the name of Sozavac Management LLC;

c.  Bank of America, account number 439004790767, held in the name of Never Look

Back Entertainment LLC;

d.  Bank of America, account number 325018112953, held in the name of Novus

Content LLC;

e.  BBVA Compass Bank, account number 2520000480, held in the name of MBC

Choice Trucking LLC;

f.  Wells Fargo, account number 2734041169, held in the name of Love Auto LLC;

g.  Southwest Capital Bank, account number 7090587, held in the name of C&L

Enterprises LLC;

h.  Wells Fargo, account number 5823738520, held in the name of Addian Development

Company LLC.

i.  Diamond engagement style ring in the possession of Lindsey CAVAZOS.

9.  I further make this affidavit in support of a warrant pursuant to Title 18 U.S.C. §§ 981 and

982, directing the financial institutions at which accounts are established to freeze the

contents of the account in place and to refuse the withdrawal of any amount from the account

by anyone other than IRS-CI, and while any contents of the account are frozen in place to

accrue deposits, interest, and dividends, until IRS-CI directs that the contents of the account

be finally liquidated and no contents remain.  Freezing the contents may be appropriate in the

event the bank is unable to provide the funds immediately to the federal agents and therefore

restricts the removal and/or dissipation of the funds by the account holder(s).

10.  Based on the facts set forth herein, I believe there is probable cause to seize the funds

contained in the account identified.  The account constitutes property used to facilitated

and/or involved in transactions or attempted transactions in violation of Title 18 U.S.C. §§

1956 and 1957, or is property traceable to such offenses. Therefore, the accounts are subject to civil forfeiture under Title 18 U.S.C. § 981(a)(1)(A) and criminal forfeiture under Title 18 U.S.C. § 982(a)(1).

## FACTS SUPPORTING PROBABLE CAUSE

### Background of Investigation

11. On or about July 11, 2014, the Albuquerque Division of the FBI, along with IRS-CI, began an active investigation through the use of a controlled purchases into the Enrique CAVAZOS DTO. Agents have been looking into the activities of CAVAZOS since about March 29, 2013. During the course of the investigation numerous Confidential Human Sources (CHS) provided information that Enrique CAVAZOS is growing marijuana in California and distributing thousands of pounds of high grade marijuana each season throughout the United States, to include New Mexico. The FBI Albuquerque Safe Streets Task Force and IRS-CI, through investigation of CAVAZOS, identified Enrique CAVAZOS as a high-grade marijuana distributor throughout the State of New Mexico and successfully conducted numerous controlled purchases of marijuana that thus far have netted 75 pounds of high-grade marijuana from CAVAZOS. Agents have also successfully seized an additional 75 pounds of high-grade marijuana being transported from Madera, California to an unknown city in Kansas at the direction of CAVAZOS.

### CHS Information - CAVAZOS' Drug Trafficking History

12. In this investigation, agents utilized six different CHSs. For purposes of this affidavit, the CHSs are numbered in a timeline according to their first date of cooperation. CHS-1 was the first to cooperate, followed by CHS-2 and so on.

13. CHS-1 knows several marijuana distributors that CAVAZOS sold to in Las Vegas, New

Mexico including Lawrence LUCERO, who was supplied by CAVAZOS until LUCERO's

death in October 2014. CHS-1 assisted agents to conduct numerous controlled purchases of

drugs from LUCERO in 2013 and 2014. Through conversation with LUCERO and other

drug traffickers, CHS-1 believes CAVAZOS is the main marijuana distributor in Las Vegas,

New Mexico and sells hundreds, and possibly thousands, of pounds of high-grade marijuana

throughout New Mexico and across the United States. CHS-1 knows CAVAZOS personally

and has personal knowledge that he has been selling large amounts of marijuana since at least

2010.

14. CHS-2 is a marijuana distributor out of northern California. CHS-2 knows CAVAZOS by

Enrique and an alias of "Henry." CHS-2 knows CAVAZOS as a marijuana distributor who,

as of 2012, resides in Las Vegas, New Mexico. CHS-2 has purchased 50 pounds of high-

grade marijuana from CAVAZOS on one occasion in or about 2011. CAVAZOS has taken

CHS-2 to property CAVAZOS owns in northern California, where CAVAZOS grows

marijuana. CHS-2 described the location of this property owned by CAVAZOS to agents.

CHS-2 also observed packaged and un-packaged marijuana.

15. Information provided by CHS-3 indicates CAVAZOS has been selling marijuana for

approximately ten years.  CHS-3 knows CAVAZOS began selling Mexican grown marijuana

in or about 2005.  CHS-3 also knows CAVAZOS started selling high grade marijuana shortly

after 2005 due to its profitability.  CHS-3 knows CAVAZOS began selling hundreds of

pounds of marijuana to other distributors on the east coast.

16. CHS-4 has known CAVAZOS for many years and has helped him distribute marijuana since

about 2010. Beginning in 2010 and continuing through 2013, CHS-4 would drive marijuana

on behalf of CAVAZOS to his distribution network throughout New Mexico. CHS-4

delivered marijuana to Joaquin ALANIZ and numerous other subjects in New Mexico.

ALANIZ distributed out of southern NM. Between July 11, 2014 and January 30, 2015,

CHS-4 purchased a total of 75 pounds of high grade marijuana from CAVAZOS, at a cost of

$1,600 or $1,700 per pound, depending on the "flavor" of marijuana.

17. On January 9, 2015, CHS-4 met with CAVAZOS to pay $9,000 for a previous drug debt.

During this meeting CHS-4 asked how CAVAZOS keeps his clientele. The following is a

transcribed excerpt from CAVAZOS' response:

> You got to think I've been doing this shit for 10 years, so like nine years ago,
> eight years ago to six years ago, there was only a few of me. Now it's an over
> saturated market you know what I mean? It's a different game man. Nine years
> ago it was hard to find chronic, so hard to find grade so if you had it, you were so
> way ahead of the game. Like nine years ago when I was 20 to 21 I was picking up
> 10 packs man, 20 packs. Nobody in this fucking state, nobody was fronting
> anyone pounds, didn't go down like that then, you come with cash you had, that's
> it. Know what I am saying? Now people, like in a lot of ways we revolutionized
> the game bro. Like five to six years ago who was bringing in weight like that?
> People were bringing in 20 packs and shit dude.

18. On April 17, 2015, CHS-4 met with ALANIZ to discuss a potential marijuana deal. During

the meeting, ALANIZ told CHS-4 he has known CAVAZOS for about ten years and has

been selling marijuana for him most of that time. ALANIZ continued to say that he sells

about 100 pounds of marijuana per month. CHS-4 told ALANIZ that CHS-4 could supply

ALANIZ with marijuana at a cheaper rate than CAVAZOS. ALANIZ and CHS-4 discussed

meeting the following week to conduct a 100 pound marijuana deal.

19. On April 27, 2015, CHS-4 and ALANIZ agreed to meet to discuss the 100 pound marijuana

deal as outlined above in paragraph 18 of this affidavit. Surveillance was initiated at the

Walgreens located 1401 W Pierce Carlsbad, New Mexico, where ALANIZ worked as a

pharmacist. ALANIZ was observed leaving Walgreens shortly after 6:00 pm and traveled to

Albertsons located at 808 Canal Street.  After a few moments, ALANIZ returned to his vehicle and traveled to his residence located at 611 Spyglass Drive Carlsbad, New Mexico. ALANIZ arranged to meet CHS-4 in Roswell, New Mexico.  Surveillance observed ALANIZ leave his residence and travel north towards Roswell, New Mexico.  Agents believed ALANIZ was traveling with $100,000 in bulk cash to conduct the marijuana deal with CHS-4.  Sergeant Victor Martinez (Sgt. Martinez) with Eddy County Sheriff's Office executed a traffic stop of ALANIZ's vehicle.  Sgt. Martinez had ALANIZ get out of the vehicle while it was searched.  Sgt. Martinez located bulk currency in ALANIZ's vehicle which was subsequently seized.  The final count of the bulk currency was $134,280.

20. CHS-5 has been consistently transporting drugs and money for CAVAZOS for the past two years until October 2014, when Russell SAMSON was stopped by law enforcement. SAMSON was transporting approximately $100,000 for CAVAZOS from New Mexico to California on October 14, 2014.  CHS-5 made numerous trips between 2012 and 2014 between California and New Mexico to transport drugs and currency for CAVAZOS.  CHS-5 also organized several business entities for CAVAZOS including: Never Look Back Entertainment, Sozavac Management, and Novus Content.  CHS-5 also helped CAVAZOS open bank accounts in California under these business names.

21. CHS-6 also provided information indicating CAVAZOS has been selling marijuana for approximately ten years, beginning in about 2005 or 2006.  CAVAZOS began selling Mexican grown marijuana and quickly changed to selling high grade marijuana.  CHS-6 first started selling marijuana for CAVAZOS in 2008.  According to CAVAZOS, CHS-6 was a small dealer (20 pounds per month) under CAVAZOS.  CAVAZOS told CHS-6 that he does

not make much money by supplying CHS-6 marijuana and is merely helping CHS-6 by doing so.

### Tax Return Information and Analysis of Bank Deposits

22. During the course of this investigation Agents reviewed numerous records related to the financial activities of the CAVAZOS DTO. In or about August 2013, Agents began reviewing bank records received through grand jury subpoenas. In or about October 2013, Agents began reviewing tax returns received through an ex parte court order. IRS records reviewed included federal income tax returns filed with Internal Revenue Service for tax years 2009 – 2013 for CAVAZOS, Lindsey CAVAZOS and their business entities. Through review of the tax returns, it was discovered that Steven BECERRA is CAVAZOS' income tax preparer. The following paragraphs summarize bank account information versus tax returns filed with IRS, for CAVAZOS, Lindsey CAVAZOS and their business entities:

### 2009

23. CAVAZOS filed Form 1040, U.S. Individual Income Tax Return. CAVAZOS claimed Schedule C gross income from clothing sales in the amount of $123,513 and expenses of $72,712, resulting in a net profit of $54,001, which generated an income tax liability of $13,624. CAVAZOS' bank account held at Compass Bank shows total deposits of $66,833.30 during 2009. Currency made up about $51,090, or 77%, of deposits into this account. CAVAZOS held an additional account at Southwest Capital Bank which shows total deposits of $8,000 in 2009. Currency deposits account for about $6,000, or 75%, of total deposits into this account.

24. Lindsey CAVAZOS (formerly Lindsay ARELLANES) filed Form 1040, U.S. Individual Income Tax Return in 2009. Lindsey CAVAOS claimed wages of $6,106 from Maloney's

Bar and Grill.  After claiming the Making Work Pay Credit, the Earned Income Credit and Child Tax Credit, Lindsey CAVAZOS received a refund of $3,416.  In contrast, Lindsey CAVAZOS' bank account held at Compass Bank shows total deposits of about $70,000.  Currency made up about $48,500, or 70%, of total deposits into this account.

25. MBC Choice Trucking, Inc. (MBC) filed Form 1120S, U.S. Income Tax Return for an S Corporation in 2009.  CAVAZOS and Lindsey CAVAZOS are each 50% owners of MBC, however, neither CAVAZOS nor Lindsey CAVAZOS claimed K-1 income or expenses from MBC on their respective tax returns in 2009.  The tax return for MBC shows total income of $52,938 and total deductions of $89,198, resulting in an ordinary business loss of $36,260.

**2010**

26. CAVAZOS filed Form 1040, U.S. Individual Income Tax Return in 2010. CAVAZOS claimed Schedule C net income of $12,749 (gross receipts of $55,407 less cost of goods sold and expenses of $42,658) from clothing sales.  After using the standard deduction, the tax return resulted in tax due and owing of $1,650.  CAVAZOS' bank account at Compass Bank shows total deposits of about $30,000 during 2010.  Currency made up about $27,000, or 89%, of total deposits.

27. Lindsey CAVAZOS failed to file a federal income tax return for 2010.  Lindsey CAVAZOS' bank account at Compass bank shows total deposits of about $74,000 in 2010.  Currency deposits made up about $57,000, or 78%, of total deposits in 2010.  Deposit slips show multiple different types of handwriting that do not appear to be consistent with each other, indicating that multiple individuals were making currency deposits into Lindsey CAVAZOS' bank account.

28. MBC Choice Trucking, Inc. (MBC) filed Form 1120S, U.S. Income Tax Return for an S Corporation in 2010.  CAVAZOS and Lindsey CAVAZOS are each 50% owners of MBC, however, neither CAVAZOS nor Lindsey CAVAZOS claimed K-1 income or expenses from MBC on their respective tax returns in 2010.  The tax return for MBC shows total income of $287,679 and total deductions of $445,095, resulting in an ordinary business loss of $157,416. MBC's bank account at Compass Bank shows total deposits of about $341,000.  Currency made up about $83,000, or 25%, of total deposits.  Although MBC claimed a significant amount of income on its 2010 Form 1120S, there was a significant amount of currency deposited into its account.  The source of the currency is believed to be derived from CAVAZOS' illegal drug trafficking activities as trucking is not a cash intensive business.  Analysis of MBC's account shows MBC was a subcontractor for GLG II LTD (GLG).  GLG was the primary source of deposits into MBC's bank account.

### 2011

29. CAVAZOS and Lindsey CAVAZOS filed a joint Form 1040, U.S. Individual Income Tax Return.  CAVAZOS claimed wages from MBC in the amount of $26,528 and Schedule C net income from Sozavac Management LLC, a company organized by CAVAZOS on March 31, 2011, in the amount of $18,598 (gross receipts of $103,558 less total expenses of $84,969).  Schedule E reported income from MBC in the amount of $46,907.  CAVAZOS and Lindsey CAVAZOS utilized a net operating loss carryover from MBC in the amount of $145,568.  These items generated total tax of $2,283 plus an estimated tax penalty of $31, resulting in a total amount due of $2,314.

30. MBC reported gross receipts of $627,130, cost of goods sold of $319,913, and a gain of $52,657, resulting in total income of $359,874.  MBC also reported total expenses of

$329,020 which resulted in net income of $30,854. The following paragraphs summarize currency deposits into various accounts which were controlled by CAVAZOS and Lindsey CAVAZOS in 2011:

a. CAVAZOS' personal bank account held at Compass Bank shows total deposits of about $84,000.  Currency deposits made up about $25,000, or 30%, of total deposits.

b. CAVAZOS' personal bank account at Southwest Capital Bank shows total deposits of about $8,000.  Currency deposits totaled $6,000, or 75%, of total deposits.

c. CAVAZOS' personal bank account at JPMorgan Chase Bank shows total deposits of about $45,000.  Currency deposits totaled $44,950, or nearly 100%, of total deposits.

d. MBC's bank account at Compass Bank shows total deposits of about $273,245. Currency deposits made up about $28,000, or 11%, of total deposits into this account.

e. Lindsey CAVAZOS' bank account at Compass Bank shows total deposits of about $63,000.  Currency deposits totaled about $47,000, or 75%, of total deposits.

f. A Bank of America checking account for Sozavac Entertainment LLC was discovered.  This account shows total deposits of about $110,000.  Currency deposits totaled, $24,000, or 22%, of total deposits.  The currency was deposited at different locations throughout the United States including: Atlanta, Georgia; Malden, Massachusetts; Arlington, Massachusetts; Albuquerque, New Mexico; Victorville, California; and Odessa, Texas.  This account contained several additional deposits indicative of money laundering between August 31, 2011 and July 2, 2012, including checks totaling $41,000 from CAVAZOS' accountant, Steven BECERRA; checks totaling $35,000 from Glen LUCERO; and one check signed by Deborah GUTIERREZ totaling $25,000 from her company, Automated Financial

Technologies.  A JPMorgan Chase bank account for the California-based company, Grow Scene Productions, was discovered.  It was further discovered that CAVAZOS was given signatory authority over this bank account on January 18, 2011, with the listed title of "CEO".  A tax return for this entity has not been reviewed, however, the bank account shows total 2011 deposits of about $99,000.  Currency deposits totaled about $97,000, or 99%, of total deposits.

**2012**

31.  CAVAZOS and Lindsey CAVAZOS filed a joint Form 1040, U.S. Individual Income Tax Return for 2012.  CAVAZOS claimed wages of $12,000 from the Schedule C business, Sozavac Management.  Schedule C included ordinary income in the amount of $3,639 (gross receipts of $28,777 less total expenses of $25,220).  Schedule K-1 flow through income from MBC in the amount of $18,142 was also reported.  CAVAZOS and Lindsey CAVAZOS also claimed interest income in the amount of $1,040 and a net operating loss carryover in the amount of $67,591.  These items resulted in a total loss in the amount of $32,770.  After claiming itemized deductions of $32,208, exemptions of $7,600 and receiving credit for total tax payments of $970, CAVAZOS and Lindsey CAVAZOS received a refund in the amount of $523.  The following paragraphs outline tax returns for CAVAZOS and Lindsey CAVAZOS' businesses deposits into and accounts controlled by CAVAZOS and Lindsey CAVAZOS:

   a.  CAVAZOS' bank account at Bank of America shows total deposits of about $24,000 during 2012.  Currency deposits totaled $3,000, or 13%, of total deposits.  Other sources of deposits include checks from other business bank accounts which CAVAZOS and Lindsey CAVAZOS control.

b. Lindsey CAVAZOS' bank account at Compass Bank shows total deposits of about $26,000. Currency deposits account for about $21,000, or 80%, of total deposits.

c. Sozavac Management's bank account at Bank of America shows total deposits of about $43,000. Currency deposits account for about $12,000, or 28%, of total deposits. Other deposits include checks totaling $11,000 from accounts Steven BECERRA controls and checks from other CAVAZOS-controlled business accounts. Sozavac Entertainment's bank account shows total deposits of about $141,000. Currency deposits account for about $33,000, or 24%, of total deposits.

d. Form 1120S, U.S. Income tax Return for an S Corporation was filed for MBC. The return claimed a net gain of $29,567 and depreciation of $11,425, resulting in ordinary income of $18,142. Through analyzing this account, it was discovered this companies' assets were being sold.

e. Form 1065, U.S. Return of Partnership Income was filed for CVZS LLC. CVZS was organized as a New Mexico limited liability company on July 30, 2012. The tax return claimed gross receipts of $47,850 and total deductions of $19,070, resulting in ordinary income of $28,780. However, this K-1 income was not carried to CAVAZOS and Lindsey CAVAZOS' Form 1040. CAVAZOS and Lindsey CAVAZOS each own 50% of this entity. CVZS' bank account at Bank of America shows total deposits of about $43,000 in 2012. Currency deposits account for about $25,000, or 59%, of total deposits.

f. Form 1120S, U.S. Income Tax Return for an S Corporation was filed for Never Look Back Entertainment LLC (NLB), which was organized as a New Mexico limited liability company on June 8, 2012. The bank account for NLB at Bank of America

shows total deposits of about $54,000.  Currency deposits account for $14,000, or 27%, of total deposits.

g.  A bank account at Wells Fargo Bank was discovered for Love Auto, LLC through analysis of other CAVAZOS-controlled bank accounts.  Love Auto was organized as a New Mexico limited liability company by Lindsey CAVAZOS on June 25, 2012.  Analysis of Love Auto's Wells Fargo bank records shows total deposits of about $231,000 in 2012.  Currency deposits account total about $56,000, or 25%, of total deposits.  A federal income tax return for tax year 2012 was not filed for Love Auto.

### 2013

32. CAVAZOS and Lindsey CAVAZOS filed a joint Form 1040, U.S. Individual Income Tax Return.  Income items on the return included wages in the amount of $18,000from Love Auto; a Schedule C business loss from Sozavac Management in the amount of $58,487, which also included a Schedule K-1 loss from Serene Touch Salon and Spa in the amount of $57,664; and a Schedule E net loss in the amount of $44,267, which includes Schedule K-1 income and losses from the seven entities discussed below.  These items resulted in a total loss of $62,496.  After claiming itemized deductions totaling $34,296, exemptions totaling $7,800, receiving credit for withholdings of $1,434, and reporting estimated tax payments of $1,713, CAVAZOS and Lindsey CAVAZOS received a refund in the amount of $3,147.  The following paragraphs outline tax returns and bank activity for CAVAZOS and Lindsey CAVAZOS' businesses:

a.  CVZS – Form 1065, U.S. Return of Partnership Income reported zero gross receipts and total deductions of $104,441, resulting in an ordinary business loss totaling $104,441.  In contrast, CVZS' bank account held at Bank of America shows deposits

14

totaling $112,590.97 in 2013.  Currency deposits account for $41,275, or 37%, or

total deposits.  CAVAZOS and Lindsey CAVAZOS each hold a 50% partnership

interest in CVZS.

b.  NLB Entertainment – Form 1120S, U.S. Income Tax Return for an S Corporation

reported zero gross receipts and cost of goods sold totaling $8,842.  Additional

deductions totaled $8,160, resulting in an ordinary business loss of $417,002.  In

contrast, NLB's bank account held at Bank of America shows deposits totaling

$12,729 in 2013.  Currency deposits account for $12,300, or 97%, of total deposits.

CAVAZOS owns 100% of NLB.

c.  C&L Enterprises – Form 1065, U.S. Return of Partnership Income reported total

income of $10 and total deductions of $1,099 resulting in an ordinary business loss of

$1,089.  CAVAZOS and Francisco LUCERO each own a 50% partnership interest in

this property.

d.  Café Bien – Form 1065, U.S. Return of Partnership Income reported zero income and

total deductions in the amount of $18,110.  Café Bien was not yet open for business

in 2013, however, its bank account shows total deposits of $23,142.48.  Currency

deposits account for $6,700, or 29%, of total deposits.  Lindsey CAVAZOS holds an

80% partnership interest in Café Bien.

e.  Love Auto – A tax return was not filed for Love Auto, however, CAVAZOS reported

total business income in the amount of $103,862 on Schedule E.  Love Auto's bank

account shows total deposits of $1,414,021.45.  Currency deposits account for

$293,282.57, or 21%, of total deposits.  CAVAZOS and Lindsey CAVAZOS each

own 50% of this entity.

    f.  MBC Choice Trucking – Form 1120S, U.S. Income Tax Return for an S Corporation reported other income in the amount of $4,086 and depreciation of $4,954 resulting in an ordinary business loss of $868. MBC's bank account shows total deposits of $17,151. Currency deposits account for $9,000, or 53%, of total deposits. CAVAZOS is the 100% shareholder of MBC.

    g.  Sozavac Management – Form 1040, Schedule C reported gross receipts of $28,777. Sozavac Management's Bank of America checking account shows total deposits of $57,326.47. Currency deposits account for $23,792.82, or 42%, of total deposits.

33. Through analysis of bank records for the entities CAVAZOS and Lindsey CAVAZOS own and control, many instances of unexplained currency deposits into these accounts were discovered, as detailed above. It is believed that CAVAZOS, Lindsey CAVAZOS, and other members of the CAVAZOS DTO deposited currency which was proceeds of specified unlawful activity, namely trafficking high-grade marijuana, into numerous business and personal bank accounts since at least 2009. It is further believed these currency deposits were spread out and deposited into various different accounts to disguise the true nature of their source.

34. The following chart outlines currency deposits which are believed to be proceeds of CAVAZOS' illegal drug trafficking activities into accounts that were used to facilitate the concealment of these illicit funds between 2009 and 2014:

| ACCOUNT | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | TOTAL |
|---|---|---|---|---|---|---|---|
| Enrique Cavazos – Bank Of America | $0 | $0 | $0 | $3,000.00 | $700.00 | $1,400.00 | $5,100.00 |
| Enrique Cavazos – Southwest Capital | $0 | $0 | $6,000.00 | $500.00 | $0 | $0 | $6,500.00 |
| Lindsey Arellanes – Cavazos-Compass Bank Account #2508743311 | $48,582.00 | $56,930.00 | $36,430.00 | $19,594.00 | $0 | $0 | $161,536.00 |

| ACCOUNT | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | TOTAL |
|---|---|---|---|---|---|---|---|
| MBC Choice Trucking – Compass Bank Account #2520000480 | $2,450.21 | $82,775.00 | $27,930.00 | $0 | $9,000.00 | $0 | $122,155.21 |
| Sozavac Management – Bank Of America Account #439004904744 | $0 | $0 | $0 | $11,530.76 | $22,360.82 | $1,080.00 | $34,971.58 |
| Sozavac Entertainment – Bank Of America Account #58274496 | $0 | $0 | $24,000.00 | $33,000.00 | $0 | $0 | $57,000.00 |
| NLB Entertainment – Bank Of America Account #439004790767 | $0 | $0 | $0 | $14,000.00 | $12,300.00 | $63,400.00 | $89,700.00 |
| CVZS – Bank Of America Account #439005117394 | $0 | $0 | $0 | $24,950.00 | $41,275.00 | $10,134.26 | $76,359.26 |
| Love Auto – Wells Fargo Bank Account #2734041169 | $0 | $0 | $0 | $56,031.00 | $293,282.57 | $55,168.50 | $404,482.07 |
| Novus Content – Bank Of America Account #325018112953 | $0 | $0 | $0 | $0 | $23,300.00 | $71,720.00 | $95,020.00 |
| Grand Total | $51,032.21 | $139,705.00 | $94,360.00 | $162,605.76 | $402,218.39 | $202,902.76 | $1,052,824.12 |

### Specific Facts Related to Southwest Capital Bank Account #7090587 in the name of C&L Enterprises LLC and Wells Fargo Bank Account #5823738520 in the name of Addian Development Company LLC

35. As mentioned in paragraph 30c. of this affidavit, CAVAZOS and Francisco LUCERO each

own 50% in a company called C&L Enterprises LLC (C&L).  Through analysis of C&L's

checking account number 7090587 at Southwest Capital Bank, it was discovered that five

checks totaling $130,000 were deposited between May 2, 2013 and July 19, 2013.  Each of

these five checks were traced to Compass Bank account number 2508860822 held in the

name of Automated Financial Technologies LLC (AFT) and consisted of the following:

17

    a.  Check number 1418 in the amount of $30,000 which cleared on May 2, 2013;

    b.  Check number 1419 in the amount of $30,000 which cleared on May 2, 2013;

    c.  Check number 1423 in the amount of $25,000 which cleared on May 31, 2013;

    d.  Check number 1424 in the amount $25,000 which cleared on June 17, 2013; and

    e.  Check number 1425 in the amount $20,000 which cleared on July 19, 2013.

Each of these checks was signed by Deborah GUTIERREZ. Deborah GUTIERREZ and her father, Rafael Gutierrez, who died in August 2013, had signatory authority over AFT's bank account. CAVAZOS and Francisco LUCERO each have signatory authority and exercise dominion and control over C&L's bank account.

36. C&L's checking account number 7090587 held at Southwest Capital Bank also contained deposits totaling $50,850 between November 5, 2013 and June 1, 2014 from Addian Development Company LLC's (ADC) bank account number 5823738520 held at Wells Fargo Bank. ADC is owned by ALANIZ, whose drug trafficking activities are summarized above in paragraphs 16, 18 and 19 of this affidavit. ALANIZ exercises complete dominion and control over Wells Fargo bank account number 5823738520 held in the name of ADC. Further tracing of these funds revealed they stemmed from three checks totaling $100,000 deposited to ADC's account between April 8, 2013 and April 10, 2013. All three checks were traced to Compass Bank account number 2508860822 held in the name of AFT and consisted of the following checks:

    a.  Check number 1415 in the amount of $40,000 cleared on April 8, 2013;

    b.  Check number 1416 in the amount of $40,000 cleared on April 8, 2013; and

    c.  Check number 1417 in the amount of $20,000 cleared on April 10, 2013.

37. AFT is a company that stocked and serviced automated teller machines. A review of AFT's Compass Bank account discussed in paragraphs 35 and 25 above indicates that it is a "vault" account.  This account had numerous deposits from a company called Elan Management (Elan). On January 29, 2015, I participated in a conference call with a sales manager from Elan, a paralegal from US Bank and the senior business line risk manager from US Bank.  I was informed that US Bank is the parent company to Elan and maintains Elan's records. Elan had a long-standing relationship with AFT which began in about 2005.  Elan did the processing for AFT's ATM transactions.  The Elan sales manager stated AFT had approximately 52 ATM terminals as of December 31, 2014, which is consistent going back to 2009.  Elan settles two daily entries with AFT each day, which includes a "cash settlement" entry and a "surcharge income" entry.  The "cash settlement" entry is for dollars withdrawn per ATM terminal.  The "surcharge income" entry includes the fees that AFT charged their customers to use their ATM terminals.  Elan settled these entries to AFT's vault account held at Compass Bank.

38. A review of AFT's vault account at Compass Bank (account number 2508860822) shows the daily entries from Elan which are deposits into the vault account.  There are also numerous withdrawals in large, round increments which are believed to be currency withdrawals used to stock AFT's ATM terminals based on my conversation with Elan.

39. AFT's records were reviewed pursuant to a grand jury subpoena issued to AFT.  AFT provided a disc containing AFT's QuickBooks software files.  I reviewed the bookkeeping entries made in QuickBooks which correspond to the checks that were written to C&L and ADC.  For each of the checks, there was a debit to AFT's "inventory" account and a credit to AFT's "vault" account on or about the same day as each of the checks were deposited to

C&L and ADC's bank account.  Based on my knowledge of accounting principles, I know that AFT's "inventory" and "vault" accounts are both asset accounts.  When the debit was made to AFT's "inventory" account, it indicated an increase to their inventory.  Since AFT stocks ATM terminals, its inventory is currency.  When the credit was made to the "vault" account, it indicated a decrease to their vault bank account held at Compass Bank and corresponds to the checks cleared out of that account.  Furthermore, AFT's QuickBooks files show notes in the "memo" field.  The following table is a summary of the journal entries made to AFT's books and records that correspond to the checks written to C&L and ADC:

| Trans # | Type | Date | Memo | Account | Debit | Credit |
|---------|------|------|------|---------|-------|--------|
| 2221 | General Journal | 05/31/2011 | Ck#1347 to MBC Choice Trucking for Vault Cash | Vault 22 | | $12,500 |
| | | | | Inventory | $12,500 | |
| 2699 | General Journal | 09/01/2011 | Ck #1352 to Sozavac Ent for Vault Cash | Vault 22 | | $25,000 |
| | | | | Inventory | $25,000 | |
| 5233 | General Journal | 04/08/2011 | Ck#1415 Vault Cash | Vault 22 | | $40,000 |
| | | | | Inventory | $40,000 | |
| 5234 | General Journal | 04/08/2011 | Ck#1416 Vault Cash | Vault 22 | | $40,000 |
| | | | | Inventory | $40,000 | |
| 5235 | General Journal | 04/10/2011 | Ck#1417 Vault Cash | Vault 22 | | $20,000 |

| Trans # | Type | Date | Memo | Account | Debit | Credit |
|---|---|---|---|---|---|---|
| | | | | Inventory | $20,000 | |
| 5315 | General Journal | 05/02/2013 | Ck#1418 Vault Cash | Vault 22 | | $30,000 |
| | | | | Inventory | $30,000 | |
| 5316 | | 05/02/2013 | Ck#1419 Vault Cash | Vault 22 | | $30,000 |
| | | | | Inventory | $30,000 | |
| 5318 | General Journal | 5/31/2013 | Ck#1423 Vault Cash | Vault 22 | | $25,000 |
| | | | | Inventory | $25,000 | |
| 5453 | General Journal | 06/17/2013 | Ck#1424 Vault Cash | Vault 22 | | $25,000 |
| | | | | Inventory | $25,000 | |
| 5570 | General Journal | 07/19/2013 | Ck#1425 for Vault Cash | Vault 22 | | $20,000 |
| | | | | Inventory | $20,000 | |

Based on AFT's journal entries and the notes made in the "memo" section, I believe CAVAZOS and/or ALANIZ provided AFT with currency, and in turn, AFT wrote checks to C&L and ADC. I further believe this was done in an attempt to disguise CAVAZOS' and/or ALANIZs' illicit proceeds and make it appear as though the funds deposited into C&L and ADC were from a legitimate source.

## Specific Facts Related to Lindsey CAVAZOS' Wedding Ring

40. As mentioned in paragraph 14 of this affidavit, CHS-2 knows CAVAZOS is a drug dealer as CHS-2 has purchased high grade marijuana from CAVAZOS.  In 2011 CHS-2 sold CAVAZOS a diamond engagement style ring for $15,000 cash. CHS-2 believes CAVAZOS was planning to get married and wanted to use the ring as an engagement ring.

41. Pursuant to a court ordered Title III wiretap on CAVAZOS' telephone number (650) 623-7339, a phone conversation between CAVAZOS and Greenwood at approximately 5:13 pm. During the call, CAVAZOS and Greenwood discussed upgrading Lindsey CAVAZOS' wedding ring.  Greenwood stated he could give CAVAZOS $15,000 credit for L. CAVAZOS' current ring and it would cost CAVAZOS $33,000 out of pocket to upgrade to a 2.51 carat, VVS2, G color, flawless diamond.  Greenwood stated the new diamond is a $50,000 stone.  CAVAZOS asked if Greenwood would accept separate payments of $15,000; $10,000; and $8,000 over the course of three months.  CAVAZOS stated the payment would be in cash and asked if they could keep it "under wraps".  Greenwood responded, "For sure." CAVAZOS asked to put the ring in Lindsey CAVAZOS' name for insurance purposes and that he would be in California later in the week with the old ring and the initial $15,000 payment.

42. Based on the facts and circumstances set forth in this affidavit, I believe CAVAZOS exchanged illegal proceeds for the ring purchased from CHS-2, thus making it property involved in money laundering.  It is unknown whether CAVAZOS upgraded the initial wedding ring as detailed in paragraph 41; however, if CAVAZOS followed through with the upgrade, the new ring would also be property involved in money laundering.

## CONCLUSION

43. Your Affiant submits that based on the information contained in this affidavit, there is probable cause to believe that CAVAZOS, Lindsey CAVAZOS, ALANIZ, LUCERO, GUTIERREZ, and possibly others devised a scheme to take funds earned from trafficking illegal narcotics, and conducted financial transactions designed to conceal the nature, source, and location of those proceeds through various bank accounts and through the purchase of Lindsey CAVAZOS' wedding ring.

44. In your Affiant's experience, money launderers often comingle illegal proceeds with legitimate business earnings in an effort to conceal or hide the true source of the proceeds.  It is your Affiant's belief that should these funds continue to be accessible to CAVAZOS, Lindsey CAVAZOS, LUCERO, and ALANIZ, it will allow an avenue for these individuals to obtain the illegal proceeds back in a manner that will make the funds appear to from a legitimate source or to purchase additional assets with the illegal proceeds, thus allowing them to keep the fruits of their criminal activities.

45. Wherefore, your Affiant respectfully requests that pursuant to Title 18 U.S.C. §§ 981 and 982, and Title 28 U.S.C. §2461, this Court issue a warrant to permit Internal Revenue Service – Criminal Investigation to seize the funds contained in the accounts referenced in paragraph 8 of this affidavit and further directing the financial institutions at which those accounts are

held to freeze the contents of those accounts from any withdrawal other than those authorized

by Internal Revenue Service – Criminal Investigation or this Court.

Approved by AUSAs Stephen R. Kotz and Jennifer M. Rozzoni

_____
**Dianna Aragon**
**Special Agent, IRS-CI**
**Albuquerque, New Mexico**


**SUBSCRIBED TO AND SWORN BEFORE ME ON THIS**
_____ day of November, 2015

_____
**WILLIAM P. LYNCH**
**UNITED STATES MAGISTRATE JUDGE**